UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRED WESTFIELD, in his capacity as Administrator De Bonis Non Administrator of Walter Westfeld, et al. ) ) ) ) | |
| v. ) ) | No. 3:09-0204 JUDGE CAMPBELL |
| FEDERAL REPUBLIC OF GERMANY ) | |

## MEMORANDUM

### I. Introduction

Pending before the Court is the Defendant's Motion To Dismiss Complaint Pursuant To Rule 12 (Docket No. 9). The Plaintiff has filed a Response (Docket No. 20) to the Motion, and the Defendant has filed a Reply (Docket No. 24). Also pending before the Court is Defendant's Motion For Judicial Notice (Docket No. 7). The Court held a hearing on the Motions on July 24, 2009.

For the reasons set forth below, the Motion To Dismiss is GRANTED, and the Motion For Judicial Notice is DENIED, as moot.

### II. Factual and Procedural Background

The Plaintiffs, Fred Westfield, in his capacity as administrator *de bonis non administratis* of the Estate of Walter Westfeld, and the individual heirs of Walter Westfeld, originally brought this action in Davidson County Chancery Court seeking recovery of damages from the Defendant, Federal Republic of Germany, for the alleged seizure and conversion of the art and tapestry collection of Walter Westfeld by the Nazi regime and its officials in Germany. (Complaint, at ¶ 1 (Docket No. 1-1)). The Defendant removed the action to this Court based on

28 U.S.C. §§ 1330, 1331, and 1441(d). (Notice of Removal (Docket No. 1)).

According to the Complaint, Walter Westfeld was a renowned art dealer in Germany in the mid-1930s. (Complaint, at ¶ 11). Beginning in 1933, Westfeld was allegedly persecuted and terrorized as a German Jew by the Nazi government and its agents. (Id., at ¶ 12). Although he made efforts to leave Germany and to remove his art collection to the United States, Westfeld was unsuccessful in removing the vast bulk of his collection from occupied Europe. (Id., at ¶¶ 13-16).

Westfeld was arrested and imprisoned in Germany in November, 1938 for an alleged violation of currency exchange laws. (Id., at ¶ 17). According to the Complaint, the "true purpose was to have an excuse to seize his vast art collection for sale on the private market by the German government to raise funds," which was "a typical practice of the Nazi government and part of a well-conceived policy of profiting substantially from Jewish owned works of art and property generally by first compelling their sale on the private market and keeping the profit." (Id.) Westfeld's art and tapestry collection was seized and auctioned off through an order of the District Attorney's Office Düsseldorf on December 12-13, 1939. (Id.) Westfeld was sentenced on July 2, 1940 to prison for 3 ½ years and fined Reichmarks 300,000 for the purported currency violation. (Id., at ¶ 22). The proceeds of the earlier auction were used to pay the fine. (Id.) By a post-war order issued on May 13, 1952, the Regional Court Düsseldorf declared the earlier sentence null and void. (Id., at ¶ 23).

Westfeld was interrogated while in prison about other artwork not previously uncovered for auction. (Id., at ¶ 24). The Nazi government allegedly sold other Westfeld artwork in late 1943-44 after Westfeld had been sent to "the East" and "exterminated." (Id., at ¶ 26).

2

The Complaint alleges that the Westfeld collection was unlawfully converted by the Defendant, and seeks the imposition of a constructive trust and an equitable accounting as to that collection. (Id., at ¶¶ 42-50). The Complaint further alleges that on at least two occasions, in 1939 and late 1943-early 1944, the Nazi government of Germany engaged in commercial activities "by auctioning off in the private market place major elements of Walter Westfeld's remarkable collection of works of art and tapestries, which were destined for the United States and in at least one case already was the property of his Tennessee-domiciled heirs." (Id., at p.1) The Plaintiffs allege that the Defendant is the successor to the Nazi government that ruled Germany from 1933 to 1945. (Id., at ¶ 4).

### III. Analysis

A. The Standards Governing Motions To Dismiss

Defendant bases the pending Motion To Dismiss on Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, which permits dismissal of a complaint for lack of subject-matter jurisdiction (Rule 12(b)(1)) or for failure to state a claim upon which relief can be granted (Rule 12(b)(6)).

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded

3

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1

Defendant seeks dismissal of the Complaint on two grounds: (1) the Court lacks subject matter jurisdiction because the Foreign Sovereign Immunities Act renders it immune from the jurisdiction of the courts of the United States; and (2) the action is barred by the applicable statute of limitations.

B. The Foreign Sovereign Immunities Act

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, et seq. ("FSIA"), provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 and 1607 of this chapter." 28 U.S.C. § 1604. Section 1605 provides a list of general exceptions to foreign state immunity, and Section 1607 removes immunity from a foreign state as to certain counterclaims. The Supreme Court has explained that the FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in the courts of this country." Saudi Arabia v. Nelson, 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). Unless one of the specified exceptions apply, a foreign state is presumptively immune. Republic of Iraq v. Beaty, 129 S.Ct. 2183, 2186 (2009).

The Sixth Circuit has explained how to apply the FSIA's burden-shifting process in ruling on a Rule 12(b)(1) motion to dismiss: "The party claiming FSIA immunity bears the initial burden of proof of establishing a prima facie case that it satisfies the FSIA's definition of a foreign state; once this prima facie case is established, the burden of production shifts to the non-movant to show that an exception applies. . . The party claiming immunity under FSIA retains the burden of persuasion throughout this process." O'Bryan v. Holy See, 556 F.3d 361, 377

4

(citations omitted).

In the Complaint, the Plaintiffs do not dispute that the Defendant is a foreign state under FSIA. They contend, however, that the Defendant is not entitled to immunity because its actions fall within the exception for "commercial activity," which provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
> * * *
>> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

The statute defines "commercial activity" as follows:

> (d) A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d).

Specifically, Plaintiffs rely on the last clause of Section 1605(a)(2) and contend that the "act" of the German government in converting Westfeld's property was "in connection with" the "commercial activity" of selling the converted artwork on the private art market through privately-owned auction houses. (Complaint, at ¶ 6). Plaintiffs further contend that this activity had a "direct effect in the United States" because the artwork intended for immediate transfer to the United States by Westfeld did not reach the United States, and Westfeld's relatives and the United States art market were deprived of his property. (Id.)

5

Defendant argues that the act of seizing Westfeld's property was not a "commercial activity" within the meaning of the FSIA.

The Supreme Court addressed the parameters of the third clause of the commercial activity exception in <u>Republic of Argentina v. Weltover, Inc.</u>, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). In <u>Weltover</u>, the Court held that Argentina's issuance of bonds providing for repayment in United States dollars was a commercial activity akin to the execution of a "garden-variety debt instrument[]" by a private party. 112 S.Ct. at 2165-67. In reaching its decision, the Court considered the meaning of the term "commercial:"

> In accord with that description, we conclude that when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA. Moreover, because the Act provides that the commercial character of an act is to be determined by reference to its 'nature' rather than its 'purpose,' 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, *the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce,'* . . . Thus, a foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods. . .

<u>Weltover</u>, 112 S.Ct. at 2166 (citations omitted)(emphasis added).

In an opinion issued the next year, the Supreme Court considered the meaning of the phrase "based upon" in applying the first clause of the commercial activity exception. <u>Saudi Arabia v. Nelson</u>, 113 S.Ct. at 1479-80. The Court held that the intentional conduct upon which the action was based – the Saudi Government's wrongful arrest, imprisonment, and torture of the plaintiff – did not fit within the exception:

6

> The conduct boils down to abuse of the power of its police by the Saudi Government, and however monstrous such abuse undoubtedly may be, a foreign state's exercise of the power of its police has long been understood for purposes of the restrictive theory as peculiarly sovereign in nature. . . Exercise of the powers of police and penal officers is not the sort of action by which private parties can engage in commerce.

113 S.Ct. at 1479-80 (citations omitted).

The Sixth Circuit recently considered the commercial activity exception in a case brought by alleged victims of sexual abuse by Roman Catholic clergy against the Holy See asserting claims for violation of customary international law of human rights, negligence, breach of fiduciary duty, outrage/intentional infliction of emotional distress, and deceit and misrepresentation. O'Bryan v. Holy See, 556 F.3d at 368-71. The court reviewed the holdings of the Supreme Court in Weltover and Nelson and concluded that they point to "two distinct limitations on the application of the commercial activity exception." Id., at 379. Those limitations are:

> First, the activity must be of the type in which private individuals engage; if the activities in question are not private, but sovereign in nature, then the commercial activity exception will not apply. . . Second, the Weltover and Nelson cases also instruct courts to avoid the artful pleading of plaintiffs and look to the core of the activities alleged to be commercial in nature.

Id., at 379-80 (citations omitted). Applying these two limiting principles, the court concluded that the commercial activity exception did not apply to the plaintiff's claims because all the claims stemmed from the alleged promulgation of a policy of secrecy for clergy sexual abuse issues, and the gravaman of plaintiff's claims was the tortious conduct of priests which was allegedly facilitated by the tortious conduct of Holy See employees. Id., at 380.

Several courts have considered the applicability of the commercial activity exception's third clause in connection with fact situations similar to the one presented here. In Garb v.

7

Republic of Poland, 440 F.3d 579, 582 (2nd Cir. 2006), the plaintiffs, Jewish persons and entities who owned real property in Poland in 1939 to 1945, brought suit against the Republic of Poland and the Ministry of the Treasury of Poland seeking redress for the expropriation of real property from Jews in post-war Poland. In determining the applicability of the exception, the Second Circuit first turned to the task of identifying the nature of the acts of the defendants that formed the basis for plaintiffs' claims. Id., at 586. The court determined that regardless of the subsequent commercial treatment of the expropriated property by the defendants, plaintiffs' claims were based upon the manner in which the property was obtained – through acts of expropriation, or nationalization. Id.

Turning to the act of expropriation, the court explained that it is "a decidedly sovereign - rather than commercial - activity." Id. The expropriation was not "in connection with a commercial activity of a foreign state" as required by the third clause of the exception:

> Concededly, the expropriation of property from plaintiffs – indeed, from anyone who claims unlawful taking of property – is, in some sense, 'connected' to any subsequent commercial treatment of that property or its proceeds. Had there been no expropriation, there would have been no properties to treat in a commercial manner; in the circumstances presented here, Poland would have no properties to manage or sell. Such a connection, however, is simply too 'attenuated,' and not substantive enough, to satisfy § 1605(a)(2).

Id., at 587.

In Rong v. Liaoning Province Government, 452 F.3d 883 (D.C. Cir. 2006), the plaintiffs brought suit against a Chinese province alleging conversion and other claims based on the seizure of their controlling interest in an automobile manufacturing company. In applying the third clause of the commercial activity exception, the Circuit Court for the District of Columbia first determined that Weltover required the plaintiff to establish that: (1) the lawsuit is based

upon an act that took place outside the territory of the United States; (2) the act must have been taken in connection with a commercial activity; and (3) the act must have caused a direct effect in the United States. 452 F.3d at 888-89. The court found it unnecessary to reach the third requirement as it determined that the plaintiff had failed to establish the second element. Id., at 889.

In reaching its decision, the court explained that while some actions of the Province in taking over the automobile company seemed commercial, "all of these acts flow from the [defendant's] 'state assets' declaration – an act that can be taken only by a sovereign." Id. The court pointed out that the Province did not assume control of the company by purchasing its stock, "instead it declared the [plaintiff's shares] to be state assets and claimed them as does a sovereign." Id., at 890. "These acts. . . constituted a quintessentially sovereign act, not a corporate takeover," the court said.

The court then rejected plaintiff's argument that the Province's use of his shares after expropriating them transformed its actions into commercial activity:

> If [plaintiff's] interpretation of commercial activity were correct, then almost any subsequent disposition of expropriated property could allow the sovereign to be haled into a federal court under FSIA. Such a result is inconsistent with our precedent, the decisions of other circuits and the Act's purpose.

Id., at 890-91 (citations omitted). See also Haven v. Polkka, 215 F.3d 727, 736 (7th Cir. 2000)(Plaintiffs' claims that Polish government illegally seized their property after World War II and that Polish bank failed to pay insurance claim on the property not "based upon" subsequent alleged commercial activity of bank in placing internet advertisements to United States consumers).

Similarly, the Eleventh Circuit has ruled that the third clause of the commercial activity

9

exception did not apply to the actions of the Pakistani Government in the expropriation of plaintiff's land in Pakistan for military use. Beg v. Islamic Republic of Pakistan, 353 F.3d 1323 (11th Cir. 2003).  The court explained that: "Confiscation of real property is a public act because private actors are not allowed to engage in 'takings' in the manner that governments are." 353 F.3d at 1326.

On the other hand, the Ninth Circuit held in Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 708-10 (9th Cir. 1992), that an expropriation by the Argentinian government "may" fall within the third clause of the commercial activity exception because the government continued to operate the plaintiff's hotel for profit after the seizure.  The Ninth Circuit's decision was issued prior to the Supreme Court's decision in Weltover, however, where the Court made clear that in determining whether a government's action is commercial, the court is to consider the nature of the act rather than its motive or purpose. 112 S.Ct. at 614-15.  See Beg, 353 F.3d at 1326 n.1.

Although the treatment of Walter Westfeld by the Nazi government as alleged in the Complaint was ineffably horrendous, the Court concludes that the actions upon which Plaintiffs' Complaint is based were not taken in connection with a commercial activity of the Defendant.  Based on the case law set forth above, the seizure of Mr. Westfeld's art collection cannot be considered a commercial act.  That seizure is either an expropriation of property or the satisfaction of a criminal fine or penalty imposed in connection with Mr. Westfeld's conviction.  If the seizure is deemed to be an expropriation of property, as explained in the cases cited above, it is an action that can only be taken by a sovereign.  If the seizure is deemed to have been effected for the satisfaction of a criminal fine or penalty, akin to forfeiture, it is an action that can

10

only be taken by a sovereign through its police powers and judicial functions. In either case, the actions complained of were those unique to a sovereign power rather than a private person. The subsequent disposition of the art collection on the private art market through privately-owned auction houses does not render the initial act of seizure a commercial activity.

Accordingly, the Court concludes that Plaintiffs have failed to establish that the Complaint is "based upon" an act by the Defendant in connection with a commercial activity, and therefore, FSIA's commercial activity exception does not apply in this case. Consequently, it is unnecessary for the Court to consider Defendant's statute of limitations argument.

As Plaintiffs have failed to establish an exception under the FSIA, the Defendant is presumed to be immune from suit. Accordingly, the Court is without subject matter jurisdiction over Plaintiffs' action, and the action is dismissed.

Taking the allegations of the Complaint as true, as the Court must do at this stage of the pleadings, the equities are with the Plaintiffs and call to mind the legal maxim that where there is a right, there should be a remedy.[1] However, this Court does not have jurisdiction "however monstrous"[2] the alleged conduct and Plaintiffs must seek any remedy in a forum other than the Federal courts of the United States.

As the Court has found it unnecessary to consider the probate documents submitted by the Defendant in reaching its decision, the Defendant's Motion For Judicial Notice is DENIED, as moot.

---

[1] *Ubi jus, ibi remedium*: when there is a right, there is a remedy. Black's Law Dictionary 1695 (7th ed. 1999).

[2] Saudia Arabia v. Nelson, 113 S.Ct. at 1479-80.

11

## IV. Conclusion

For the reasons set forth herein, the Defendant's Motion To Dismiss is granted, and the Defendant's Motion For Judicial Notice is denied, as moot.

It is so ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT COURT

12